UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PEDRO L. MIRANDA

     Plaintiff,                               CASE NO.:

vs.

OSCEOLA COUNTY, FLORIDA

     Defendant.

_____/

## **COMPLAINT FOR DAMAGES**

**COMES NOW** the Plaintiff, PEDRO MIRANDA, by and through his undersigned counsel and hereby sues Defendant, OSCEOLA COUNTY, FLORIDA (hereinafter referred to as "COUNTY"), and alleges the following:

1. This is an action for damages that exceeds the monetary sum of THIRTY THOUSAND DOLLARS AND 00/100 DOLLARS ($30,000.00), exclusive of attorneys' fees and costs, and is brought pursuant to 42 U.S.C. §1983 and §1988, as well as under concurrent state law, to redress violations by the Defendant and its employees of certain rights guaranteed to Plaintiff, PEDRO MIRANDA, by the fourth and fourteenth Amendments of the United States Constitution.

2. Venue is proper in this forum. This court has supplemental jurisdiction over state law claims through the operation of 28 U.S.C § 1367.

3. With respect to state law claims, a timely notice of tort claim was filed as to the County in accordance with Fla. Stat. § 768.28.

4. Plaintiff has performed all conditions precedent to the maintenance of this action, or such conditions have been waived or excused. This includes the notice requirements under Florida Statute, Section §768.28 which is attached hereto as Exhibit "A".

5. At all times material hereto, the Plaintiff, PEDRO MIRANDA, was and is a resident of Osceola County, Florida.

6. At all times material hereto, the Defendant, OSCEOLA COUNTY, was and is a governmental and political subdivision which is organized and existing under the laws of the State of Florida.

7. On March 15, 2018, Deputy Javier Arroyo, was employed by the County as a deputy, and was, at all times described herein, acting within the course and scope of his employment and under the color of law.

8. At all times material hereto, Deputy Javier Arroyo was, on information and belief, a resident of Osceola County, Florida and is otherwise *sui juris.*

9. On March 15, 2018, Deputy R. Stockman, was employed by the County as a deputy, and was, at all times described herein, acting within the course and scope of his employment and under the color of law.

10. At all times material hereto, Deputy R. Stockman was, on information and belief, a resident of Osceola County, Florida and is otherwise *sui juris.*

11. On March 15, 2018, Deputy J. Lopez Quintero, was employed by the County as a deputy, and was, at all times described herein, acting within the course and scope of his employment and under the color of law.

12. At all times material hereto, Deputy J. Lopez Quintero was, on information and belief, a resident of Osceola County, Florida and is otherwise *sui juris.*

13. On March 15, 2018, Deputy D. Valentin, was employed by the County as a deputy, and was, at all times described herein, acting within the course and scope of his employment and under the color of law.

14. At all times material hereto, Deputy D. Valentin was, on information and belief, a resident of Osceola County, Florida and is otherwise *sui juris.*

15. On March 15, 2018, Deputy G. Lane, was employed by the County as a deputy, and was, at all times described herein, acting within the course and scope of his employment and under the color of law.

16. At all times material hereto, Deputy G. Lane was, on information and belief, a resident of Osceola County, Florida and is otherwise *sui juris.*

17. On March 15, 2018 Deputy R. Page was employed by the County as a deputy, and was, at all times described herein, acting within the course and scope of his employment and under the color of law.

18. At all times material hereto, Deputy R. Page was, on information and belief, a resident of Osceola County, Florida and is otherwise *sui juris.*

19. Defendant, OSCEOLA COUNTY, was at all relevant times responsible for its employees, their training, and their actions while in the course and scope of their employment.

20. Osceola County Sheriff's Office was charged, by Defendant, with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct

of its employees will conform to the Constitution of the State of Florida, as well as the laws of said sovereign.

21. The Defendant's employees named herein were required to act in conformance with policy and procedure implemented by the Defendant, including, but not limited to, accurate and detail investigations before making arrests, including but not limited to, properly identifying emergent medical situations and circumstances, including but not limited to, ensuring the proper and reasonable use of force towards the public, and in particular the Plaintiff, under emergency medical situations and circumstances.

22. At all times relevant herein, the Defendant's Deputies were acting under the color of law and in their capacities as Deputies employed, trained, and authorized by the Defendant to represent the Defendant and the Osceola County Sheriff's Office.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

23. On March 15, 2018, Deputies Javier Arroyo, R. Stockman, J. Lopez Quintero, D. Valentin, G. Lane, and R. Page, reported to the ALDI parking lot located at 900 Cypress Parkway, Poinciana, FL 34759 to investigate a vehicle that was reported by an unknown and anonymous motorist to be swerving in and out of traffic.

24. Upon arriving at the Aldi parking lot, the deputies identified a stopped vehicle matching the description given by the anonymous 911 caller. Deputy Arroyo approached the vehicle and noted the Plaintiff's vehicle stopped over three parking spaces and the Plaintiff within the vehicle believed by the deputy to be "asleep" or "drunk."

4

25. Deputy Arroyo states in his report that the Plaintiff was unable to maintain eye contact and appeared "as if confused".   No mention is made in the report by Deputy Arroyo of any strong odor of alcohol or cannabis, blood shot eyes, slurred speech, nystagmus vision displays, indicia of criminal activity, open alcoholic beverage container, visible "open-view" drug paraphernalia or weapons, nor was there any attempt by the deputy to request or implement any field sobriety tests.

26. Instead of immediately calling for emergency medical services to attend the Plaintiff in light of his "confused" and clearly disoriented state, Deputy Arroyo endeavored to extend his physical body into the Plaintiff's vehicle without consent or permission and forcibly seize the Plaintiff's car keys from him.

27. Thereafter, Deputy Arroyo forcibly pulled the Plaintiff out of his car, and without any further attempt to assess the condition of the Plaintiff, engaged in a violent foot sweep of the Plaintiff's legs sending him crashing to the ground.   The deputy then climbed upon the back of the Plaintiff pinning him to the concrete while the other deputies kicked, punched, and stepped on Plaintiff's lethargic, debilitated and almost unconscious body.   One of the deputies intentionally kneeled with his full body weight on the Plaintiff's legs while the Plaintiff  laid immobilized on the concrete and that deputy reported hearing a "pop" coming from the leg area of the Plaintiff who already had the weight of 5 other deputies on various parts of his body.

28. It was only after the 6 deputies physically battered the defenseless Plaintiff, that it was deemed prudent to  call emergency medical services to the scene.

29. When emergency medical services arrived at the scene, they assessed the Plaintiff and immediately transported him handcuffed to Poinciana Medical Center by ambulance noting in their report that Plaintiff was suffering from a diabetic episode caused by dangerously low sugar levels that required immediate IV glucose administration.

30. Upon examination at the hospital, Plaintiff was found to have blood glucose levels of 42, loss of consciousness, amnesia, pain in his rib cage, suspected rib fracture, left hip pain, right ankle pain and pronounced limp upon ambulation, chest wall contusions, abrasions, head injury and numerous facial abrasions.

31. At the hospital, the toxicology report was negative for alcohol or drugs and positive for dangerously low blood sugar.   Notwithstanding, the medical diagnosis, the Plaintiff remained handcuffed and in custody throughout his time at the hospital.

32. Plaintiff, upon initial approach by the officers, was never informed of any articulable suspicion of any criminal activity under foot, nor arrested for, nor charged with any crime relating to this incident at the point of the initial unlawful seizure and physical battery.

## COUNT I – CLAIM UNDER 42 U.S.C 1983 UNDER THE FOURTH AMENDMENT FOR EXCESSIVE FORCE AS TO THE DEFENDANT

33. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and incorporates them herein.

34. At all times material, Deputy Javier Arroyo was in the course and scope of his employment with Defendant and was acting under color of state law.

35. At all times material, Deputy R. Stockman was in the course and scope of his employment with Defendant and was acting under color of state law.

36. At all times material, Deputy J. Lopez Quintero was in the course and scope of his employment with Defendant and was acting under color of state law.

37. At all times material, Deputy D. Valentin was in the course and scope of his employment with Defendant and was acting under color of state law.

38. At all times material, Deputy G. Lane was in the course and scope of his employment with Defendant and was acting under color of state law.

39. At all times material, Deputy R. Page was in the course and scope of his employment with Defendant and was acting under color of state law.

40. Deputy Javier Arroyo, Deputy R. Stockman, Deputy J. Lopez Quintero, Deputy D. Valentin, Deputy G. Lane, and Deputy R. Page (hereinafter referred to as "Deputies") had no probable cause to believe that Plaintiff, PEDRO MIRANDA, had committed any crime or was about to commit a crime.

41. The Deputies had neither reasonable suspicion that a crime had been committed or was about to be committed, nor did the Deputies have any particularized probable cause when they approached Plaintiff in his vehicle that he had committed a crime or intended to commit a crime.

42. The Deputies, by their own account, state the Plaintiff was sleeping when his vehicle was identified in the Aldi's parking lot in a completely stationary position.

43. Plaintiff, PEDRO MIRANDA, posed no threat to any of the Deputies at any time leading up the deputies approaching the Plaintiff who was identified by Deputy Arroyo as being asleep, confused, and unable to make eye contact.

44. Plaintiff, PEDRO MIRANDA, was debilitated by dangerously low blood levels and did not have the physical or mental ability to exit the vehicle as allegedly commanded by Deputy Javier Arroyo.

45. As a result of Plaintiff, PEDRO MIRANDA's physical and mental inability to obey Deputy Javier Arroyo's command to exit the vehicle, Plaintiff, PEDRO MIRANDA, was forcefully removed from his vehicle and thrown onto the ground by Deputy Javier Arroyo, who by his own account performed a "leg sweep" of the Plaintiff to get him to the ground.

46. Deputy Javier Arroyo's use of force was clearly excessive as Plaintiff posed no threat of harm to Deputy Javier Arroyo or the five deputies who presented to the Aldi's Parking lot, nor was Plaintiff under arrest, nor was there probable cause or reasonable suspicion that Plaintiff had committed a crime.

47. After forcefully removing Plaintiff, PEDRO MIRANDA, from the vehicle and intentionally tripping him onto the ground, deputy Javier Arroyo unreasonably and unnecessarily climbed on top of the Plaintiff, PEDRO MIRANDA, pressing his body into the concrete while the other deputies proceeded to batter the Plaintiff, PEDRO MIRANDA's body thereby causing abrasions, lacerations, and fractures to multiple body parts.

48. Deputy Javier Arroyo and the other five Deputies who reported to the Aldi's parking lot knew or should have known that their excessive use of force against the Plaintiff, PEDRO MIRANDA, was without cause. The Deputies upon their initial encounter did not identify any criminal act on the part of the Plaintiff.

49. Had the Deputies been properly trained by the Defendant, or in the alternative had the Deputies utilized the training provided to them by the Defendant, they would have been able to identify the Plaintiff as a person in need of medical attention.

50. Instead, the Deputies seized the Plaintiff without cause and beat him while in the custody of the Deputies.

51. Consequently, the Defendant, by and through its Deputies violated Plaintiff, PEDRO MIRANDA'S Fourth Amendment rights.

52. The Deputies excessive use of force upon Plaintiff, PEDRO MIRANDA's body was not objectively reasonable in light of Plaintiff's dangerously low blood sugar levels which yielded clear symptoms of fatigue, confusion, sleepiness, and weakness.

53. The level of force used herein was objectively unreasonable, excessive, and disproportionate under the circumstances.

54. All of the acts described herein deprived Plaintiff, PEDRO MIRANDA, of his rights secured to him by the United States Constitution, specifically, those rights secured to Plaintiff by the Fourth Amendment of the United States Constitution, by subjecting him to an unreasonable seizure by use of excessive force.

55. The actions of the Deputies have forced Plaintiff, PEDRO MIRANDA, to hire the undersigned attorney and to pay them a reasonable fee, which they are entitled to recover pursuant to 42 U.S.C. § 1988.

56. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT II – CLAIM UNDER 42 U.S.C. § 1983 UNDER THE FOURTH AMENDMENT FOR EXCESSIVE FORCE AS TO THE DEFENDANT'S DEPUTIES

57. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and 34-44, and incorporates them herein.

58. Assuming that Deputy Javier Arroyo had reasonable suspicion or particularized probable cause when he approached the Plaintiff's vehicle, there was no imminent threat to Deputy Arroyo or any of the other five deputies who

responded to the Aldi's parking lot. There was no legal basis for any seizure and arrest and as such no legal arrest could be deemed resisted by the hypoglycemic Plaintiff herein.

59. Moreover, under the circumstances, Plaintiff was clearly experiencing a medical emergency at the time he parked his vehicle at the Aldi's parking lot and was physically incapable of resisting arrest or posing a threat of harm to the deputies who reported to the scene at the Aldi's parking lot.

60. Deputy Javier Arroyo knew or should have known that his excessive force upon the Plaintiff's body was a violation of the Plaintiff's Fourth Amendment Rights.

61. Deputy R. Stockman knew or should have known that his excessive force upon the Plaintiff's body was a violation of the Plaintiff's Fourth Amendment Rights.

62. Deputy J. Lopez Quintero knew or should have known that his excessive force upon the Plaintiff's body was a violation of the Plaintiff's Fourth Amendment Rights.

63. Deputy D. Valentin knew or should have known that his excessive force upon the Plaintiff's body was a violation of the Plaintiff's Fourth Amendment Rights.

64. Deputy G. Lane knew or should have known that his excessive force upon the Plaintiff's body was a violation of the Plaintiff's Fourth Amendment Rights.

65. Deputy R. Page knew or should have known that his excessive force upon the Plaintiff's body was a violation of the Plaintiff's Fourth Amendment Rights.

66. Regardless of the legality or illegality of the actions against the Plaintiff while stopped at the Aldi's parking lot, the deputies excessive use of force on the

Plaintiff's body which was not objectively reasonable or proportionate under the circumstances.

67. All of the acts described herein deprived the Plaintiff of rights secured to him by the United States Constitution; specifically, those rights secured to Plaintiff by the Fourth Amendment of the United States Constitution.

68. By subjecting Plaintiff to an unreasonable seizure of his body from his car, and excessive and disproportionate use of force to Plaintiff's body while experiencing a medical emergency later identified by emergency medical personnel as low insulin levels, the Deputies while in the course and scope of their employment with Defendant, violated Plaintiff's Fourth Amendment rights under the United States Constitution.

69. The actions of the Deputies have forced Plaintiff, PEDRO MIRANDA, to hire the undersigned attorney and to pay them a reasonable fee, which they are entitled to recover pursuant to 42 U.S.C. § 1988.

70. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT III – CLAIM AGAINST DEPUTIES FOR STATE LAW BATTERY

71. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and 34-44, and incorporates them herein.

72. The Deputies, while in the course and scope of their employment with Defendant, used physical force against the Plaintiff's body that was unwarranted, excessive, intentional, disproportionate, and unreasonable under the circumstances.

73. As a result, the Deputies caused injuries to the Plaintiff including, but not limited to, bruised and fractured ribs, lacerations and abrasions to the left hip, face, arms, and legs, chest wall contusion, head injury and right ankle fracture with displacement.

74. The actions of the Deputies constitute an unwarranted battery upon the Plaintiff who was experiencing a medical emergency later identified as low insulin levels.

75. The unwarranted physical contact on the Plaintiff by the Deputies was intentional and for the purpose of inciting fear in the Plaintiff.

76. The actions undertaken by the Deputies were in bad faith, with malicious purpose, disproportionate in force and in a manner exhibiting wanton and willful disregard for the Plaintiff's rights and overall safety.

77. All of the acts described herein deprived the Plaintiff of the rights secured to him by the United States Constitution; specifically, those rights secured to Plaintiff by the Fourth Amendment of the United States Constitution.

78. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT IV – CLAIM AGAINST DEPUTIES FOR INTENTIONAL INFICTION OF EMOTION DISTRESS

79. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and 34-44, and incorporates them herein.

80. The Deputies, while in the course and scope of their employment with Defendant, presented to the Aldi's Parking Lot to investigate an anonymous 911 call identifying a driver swerving in and out of traffic.

81. The driver referenced in the call was believed by the Deputies to be the Plaintiff. However, this was never completely determined or confirmed, nor was the Plaintiff charged with any crime related to the alleged 911 call. None of the responding officers witnessed any erratic or reckless operation of any vehicle by the Plaintiff at their initial contact.

82. The Plaintiff on the day of the incident at issue here was suffering of low blood sugar and wanted to reach a destination where he can possibly buy food.

83. Deputy Javier Arroyo and five other deputies responded to the 911 call and approached Plaintiff's vehicle. The deputies immediately assumed that the Plaintiff was drunk because he was found sleeping in his car. No signs of the Plaintiff being drunk wherever identified by the Deputies, other than he was "sleeping in his car."

84. No inquiry was done of the Plaintiff other than to ask the Plaintiff for his driver' license. Unfortunately, because of his low blood sugar levels, the Plaintiff was disoriented, confused, weak and lethargic. By Deputy Arroyo's own statement, Plaintiff appeared "confused" and "unable to make eye contact."

85. Despite the obvious medical emergency before them, the Deputies determined that Plaintiff's confused state and lethargic body was due to a drunken state and

further took his physical and medical inability to obey commands as Plaintiff resisting arrest.

86. The Deputies proceeded to forcefully pull the Plaintiff out of his car, violently forced him to the ground, and beat his weak and lethargic body.

87. The Deputies recklessly caused harm to the Plaintiff by brutally beating him while he experienced a medical emergency caused by his low insulin levels.

88. The actions of the Deputies were outrageous, egregious, and emotionally traumatizing to the Plaintiff.

89. The actions undertaken by the Deputies were in bad faith, with malicious purpose and in a manner exhibiting wanton and willful disregard for the Plaintiff's rights, safety, and medical condition.

90. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT V – CLAIM AGAINST DEPUTIES FOR
## STATE LAW FALSE IMPRISONMENT

91. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and 34-44, and incorporates them herein.

92. The action of Deputy Javier Arroyo in forcibly pulling the Plaintiff out of his vehicle and then immediately inflicting a leg sweep to knock the Plaintiff to the ground, deprived the Plaintiff of liberty and amounted to unlawful detention and false imprisonment of the Plaintiff's weakened body due to a medical emergency that was later identified as insulin shock.

93. The conduct of the deputies was against the Plaintiff's will and was unreasonable and unwarranted under the medical emergency the Plaintiff was experiencing.

94. The Deputies did not have the legal authority or legal basis for unlawfully removing the Plaintiff from his vehicle, tripping him onto the pavement, handcuffing him and beating him, thereby depriving him of his rights, liberty, and freedom to seek a safe place to stop and rest before proceeding to obtain food and/or medical attention.

95. Even after the medical condition of low blood sugar was diagnosed by emergency medical personnel at the scene, the Plaintiff was held with handcuffs in the ambulance and while at the  hospital.

96. The actions were undertaken in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard to the Plaintiff's rights, safety, and obvious need for medical attention.

17

97. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT VI – NEGLIGENT HIRING, RETENTION AND TRAINING UNDER 42 U.S.C. SECTION 1983

98. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and 34-44, and incorporates them herein.

99. The Deputies, while in the course and scope of their employment, used force that was excessive and unreasonable under the circumstances against the Plaintiff thereby causing injury to multiple body parts, including fractures, lacerations, contusions, and head injury.

100. Defendant negligently knew or should have known that the Deputies were a danger to the community, incompetent and liable to do harm to citizens and/or residents of Osceola County, FL.

101. Defendant negligently failed to conduct a reasonable investigation regarding the competence of Deputies to be employed as law enforcement Deputies for the Defendant, including but not limited to, a mental health evaluation.

102. Defendant during the course of employment of its Deputies became aware or should have become aware of problems with its Deputies using excessive force and abusing their power over residents of Osceola County, Florida when performing routine stops or health checks, and in particular the Plaintiff.

103. Despite Defendant knowing of the unfitness and predisposition of its deputies, Defendant failed to take further action such as investigating, discharging, reassigning, or retraining its deputies.

104. Defendant owed the Plaintiff, PEDRO L. MIRANDA, a duty of care to hire, physically and mentally train, retrain and continue to educate its deputies to identify, access and react to medical emergencies like that medical emergency known as hypoglycemia that was present when they approached the Plaintiff.

105. Defendant owed the Plaintiff, PEDRO L. MIRANDA, a duty of care to hire and retain competent officers.

106. The actions were undertaken in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard to the Plaintiff's rights, safety and

obvious need for medical attention which demonstrate lack of proper training and education of Defendant's Deputies named herein.

107. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

### VII – CIVIL CONSPIRACY

108. Plaintiff, PEDRO MIRANDA, re-alleges paragraph 1 through 32 and 34-44, and incorporates them herein.

109. The Defendant's Deputies, acting in the course and scope of their duties as sworn deputies employed by the Defendant agreed and colluded to, directly or indirectly, to fabricate evidence in order to justify their battery, false imprisonment and infliction of emotional and physical distress and injuries upon the Plaintiff.

110. In furtherance of the direct or indirect, agreement, the Defendant's Deputies fabricated evidence and/or colluded to cover up their actual excessively violent conduct, after they battered, falsely imprisoned and inflicted emotional and physical distress upon the Plaintiff.

111. The actions were undertaken by the Deputies in bad faith, with malicious and criminal purpose, and in a manner exhibiting wanton and willful disregard to their sworn oath and duty to protect and serve the citizens of Osceola County, Florida, and in particular the Plaintiff.

112. As a direct and proximate result of the actions of the Deputies, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

**WHEREFORE,** Plaintiff, PEDRO MIRANDA, demands judgment for damages against Defendant to include but not limited to all costs, interest on past due economic losses, post judgment interest, and for all other relief available to Plaintiff pursuant to applicable law, and Plaintiff further demands trial by jury on all issues so triable.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

served on the Defendant with a copy of the Court's executed Summons.

  /S/     *Fanny Nater*            
Fanny Nater, Esquire
Fla. Bar No.: 087780
Nater Law Firm, PLLC
337 N. Fern Creek Avenue
Orlando, FL 32803
Tel: (407) 688-8896
Fax: (407) 926-0859
fanny@naterlaw.com
cyd@naterlaw.com
Attorney for the Plaintiff

June 24, 2020

**VIA Certified Mail/Return Receipt**

Osceola County Sheriff's Office
2601 E Irlo Bronson Memorial Hwy
Kissimmee, FL 34744

City of Kissimmee
101 Church Street
Kissimmee FL 34741

Osceola County Risk Management
110 W Neptune Rd,
Kissimmee, FL 34741

City of Kissimmee
Risk Management Department
2nd Floor of City Hall
101 Church Street
Kissimmee FL 34741

Jose Alvarez – Mayor of City of Kissimmee
101 Church Street
Kissimmee FL 34741

City of Kissimmee Commissioners
101 Church Street
Kissimmee FL 34741

Osceola Board of County Commissioners
1 Courthouse Sq.
Suite 4700
Kissimmee FL 34741

Re:   **Notice of Claim Pursuant to § 768.28(6) (a)-(d) and (7), Florida Statutes**

        Claimant: Pedro I. Miranda
        Date of Incident: 3/15/2018

Orlando Office
1516 E. Hillcrest Street,
Suite 304,
Orlando, FL 32803

Contact
Tel: 407-688-8896
Fax: 407-289-5256
www.naterlaw.com

EXHIBIT "A"

Dear Sir or Madam:

The Nater Law Firm, PLLC represents Pedro I. Miranda regarding the above-referenced matter. Pursuant to § 768.28(6)(a)-(d) and (7), Florida Statutes, Mr. Miranda hereby gives notice of his intent to file an action against Osceola County Sheriff's Office, Kissimmee, Florida arising from the physical aggression received by employees or agents.

The specific facts upon which this claim is based are as follows:

On March 15, 2018, Mr. Miranda while driving on his way home he started to feel dizzy due to a diabetic episode. Mr. Miranda pulled over at the Aldi's parking lot. While he was in his vehicle, Osceola County Sheriff officers approached Mr. Miranda and found him unconsciousness and not in control of his senses. Mr. Miranda was pulled out of his vehicle and severely beaten by Osceola County Sherriff officers. He was transported by ambulance from the scene to the hospital wherein it was confirmed that Mr. Miranda was having a diabetic episode.

In accordance with § 768.28(6) (c), Florida Statutes, we provide you with the following information:

1. Place of Birth:            Arecibo, Puerto Rico

2. Social Security Number:    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

3. Pedro I. Miranda owes no prior adjudicated unpaid claim to the State of Florida, its agency, officer or subdivision in excess of $200.00 that she is aware off.

Please notify my office if you have any questions regarding this matter or if you need any additional information/facts regarding the contents of this Notice of Claim letter. Thank you for your prompt attention to this matter.

Sincerely,

Fanny Nater, Esquire

FHN/ca

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jose Alvarez - Mayor of
City of Kissimmee
101 Church Street
Kissimmee, FL 34741

9590 9402 3908 8060 7676 20

2. Article Number (Transfer from service label)
7019 2280 0001 7666 3097

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Jameea Chyps
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Jameaca
C. Date of Delivery
7-6-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

City of Kissimmee
Risk Management Dept.
2nd Floor of City Hall
101 Church Street
Kissimmee, FL. 34741

9590 9402 3908 8060 7675 90

2. Article Number (Transfer from service label)
7019 2280 0001 7666 3042

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Jennifer Horn
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Jennifer Horn
C. Date of Delivery
6-26-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Osceola Co. Risk Management
1 Courthouse Sq.
Suite 400
Kissimmee, FL 34741

9590 9402 4021 8079 8985 41

2. Article Number (Transfer from service label)
7016 0750 0000 9948 5311

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Livinny Brown
C. Date of Delivery
7-20-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt